Appeal from Second District

REDFIELD v. FIRST NAT. BANK OF BRIGHAM CITY

No. 1278.   Decided Dec. 2, 1925.   Rehearing Denied Jan. 21, 1926.
(244 P. 210.)

1.   CORPORATIONS—IF COMPLAINT BY HOLDER OF NOTES ACQUIRED
THROUGH FOREIGN CORPORATION DOES NOT DISCLOSE THAT IT WAS
DOING BUSINESS WITHIN STATE, IT NEED NOT ALLEGE THAT CORPORA-
TION COMPLIED WITH STATUTE AUTHORIZING IT TO DO BUSINESS IN
STATE.   If complaint in action by holder of notes acquired
through foreign corporation does not disclose that corporation
was doing business in state, it need not allege that corporation
had complied with statutes authorizing it to do business within
state.

2   COMMERCE—COMPLAINT, NOT SHOWING THAT TRANSACTION WITH
FOREIGN CORPORATIONS WAS INTRASTATE BUSINESS, NEED NOT
ALLEGE COMPLIANCE WITH STATUTES AUTHORIZING FOREIGN COR-
PORATIONS TO DO BUSINESS WITHIN STATE.   Complaint, in action by
holder of notes acquired through foreign corporation, which did
not show that transaction was intrastate business, was not re-
quired to allege that corporation had complied with statutes
authorizing it to do business within state.

3.   JUDGMENT.   Where court has jurisdiction of subject-matter and
of person, equity will not restrain enforcement of judgment,
nor vacate it, because complaint is fatally defective.

4.   JUDGMENT.   Except for palpable fraud, rules of equity render
direct attack on judgment almost as difficult as collateral attack
thereon.

5.   JUDGMENT—BURDEN WAS ON PLAINTIFF, IN SUIT TO VACATE JUDG-
MENT, TO SHOW THAT WRITTEN NOTICE OF OVERRULING OF HIS
DEMURRER AND GRANTING TIME TO ANSWER, SERVED ON HIM, WAS
INSUFFICIENT.   Where plaintiff's complaint, in equity action to
vacate and annul judgment, showed that written notice of
overruling of his demurrer and granting him time to answer
had been mailed to him, burden was on plaintiff to show that
such service was insufficient.

6.   JUDGMENT—MAKER OF NOTE, NEGLIGENT IN FAILING TO DISCOVER
DEFENSE TO ACTION ON NOTE, HELD NOT ENTITLED TO HAVE JUDG-
MENT AGAINST HIM VACATED.   Where maker, thinking he had no
defense, left state and paid no further attention to action on
note for over 5 years, when he was informed that he had a
defense, which he might have discovered by reasonable diligence
in time to make it available in the action, *held*, that equity

would not relieve him from his negligence by vacating and annulling judgment. [1]

7. JUDGMENT—COURT OF EQUITY WILL NOT INTERFERE WITH JUDGMENT BECAUSE INJUSTICE HAS BEEN DONE, OR BECAUSE JUDGMENT IS WRONG IN LAW OR FACT, UNLESS COMPLAINANT IS WITHOUT FAULT. Court of equity will not interfere with judgment because some injustice has been done, or because judgment may be wrong in law or fact, unless complaining party was, without his fault, deprived of opportunity to present his defense in original action on merits. [2]

8. APPEAL AND ERROR—FAILURE OF JUDGMENT TO DIRECT SALE OF COLLATERAL AND APPLICATION OF PROCEEDS TO DEBT BEFORE ENTERING PERSONAL JUDGMENT HELD PREJUDICIAL ERROR ONLY IF COLLATERAL IS SHOWN TO HAVE VALUE. Failure of judgment to direct sale of collateral having any value and application of proceeds to payment of notes secured thereby before entering personal judgment against maker is prejudicial error, which may be corrected on appeal, or by proceeding in trial court, but such error is not available if collateral has no value. [3]

On Application for Rehearing.

9. JUDGMENT. In suit in equity to vacate judgment, burden is on plaintiff to show that he was prejudiced by proceeding of which he complains.

10. JUDGMENT—BURDEN IS ON PLAINTIFF, SEEKING TO SET ASIDE JUDGMENT ON NOTE ON GROUND IT DID NOT DIRECT SALE OF COLLATERAL TO PLEAD AND PROVE THAT COLLATERAL HAD SOME VALUE, AND THAT PROCEEDS THEREOF WOULD AT LEAST HAVE PARTIALLY SATISFIED JUDGMENT. Burden is on plaintiff, seeking to set aside judgment against him on his note on ground that judgment did not direct sale of collateral and application of proceeds to debt, to plead and prove that collateral had some value, and that proceeds thereof would at least have partially satified judgment.

11. JUDGMENT—FAILURE OF JUDGMENT TO DIRECT SALE OF COLLATERAL AND APPLICATION OF PROCEEDS TO DEBT BEFORE ENTERING PERSONAL JUDGMENT HELD NOT TO MAKE JUDGMENT VOID, IN SUIT TO VACATE

[1] *Higgs* v. *Burton*, 197 P. 728, 58 Utah, 103, 104; *Riddle* v. *Quinn*, 90 P. 893, 32 Utah, 341; *Benson* v. *Anderson*, 47 P. 142, 14 Utah, 334; *Leibhart* v. *Lawrence*, 120 P. 215, 40 Utah, 243; *Taylor* v. *Guaranty Mtg. Co.*, 220 P. 1067, 62 Utah, 520; *McMillan* v. *Forsythe*, 154 P. 959, 47 Utah, 571.

[2] *Anderson* v. *State*, (Utah) 238 P. 557.

[3] *National Bank* v. *Pingree*, 218 P. 552, 62 Utah, 259.

Appeal from First District

IT. Failure of judgment to direct sale of collateral and application of proceeds to payment of notes secured thereby before entering personal judgment against maker, though prejudicial error, *held* not to make judgment void on direct attack, in equity suit to vacate it.

12. JUDGMENT—ERRORS IN FAILING TO GIVE STATUTORY NOTICE OF OVERRULING OF DEMURRER AND ENTERING OF DEFAULT, IF PREJUDICIAL, HELD NOT TO RENDER JUDGMENT VOID, OR SUBJECT TO COLLATERAL ATTACK. Statutes requiring notice of overruling of demurrer, entering of default, and findings and judgment, to be given, are not jurisdictional, and errors in failing to give such notice, if prejudicial, are correctible on appeal, and do not make judgment void, or subject to collateral attack.[4]

Appeal from District Court, First District, Box Elder County; *M. C. Harris*, Judge.

Suit in equity by Fred W. Redfield against the First National Bank of Brigham City. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Pratt & Pratt*, of Ogden, and *Cheny, Jensen, Martineau & Stephens*, of Salt Lake City, for appellant.

*William E. Davis* and *LeRoy B. Young*, both of Brigham City, for respondent.

THURMAN, J.

[4] *Thero* v. *Franklin*, 160 P. 1188, 48 Utah, 587; *Franklin* v. *Thatcher*, 178 P. 922, 53 Utah, 397, distinguished.

Corpus Juris-Cyc. References:

[1, 2] Corporations 14aCJ p. 1253 n. 47; p. 1358 n. 78; p. 1361 n. 84.

[3] Judgments 34CJ p. 452 n. 26.

[4] Judgments 34CJ p. 432 n. 1; p. 523 n. 72.

[5] Judgments 34CJ p. 495 n. 90.

[6] Judgments 34CJ p. 460 n. 25.

[7] Judgments 34CJ p. 461 n. 26.

[8] Appeal and Error 4CJ p. 1064 n. 44.

[9-11] Judgments 34CJ p. 444 n. 40; p. 453 n. 40; p. 494 n. 85.

[12] Judgments 34CJ p. 436 n. 42; p. 563 n. 29.

This is an action in equity to vacate and annul a judgment of the district court of Box Elder county and to restrain the enforcement thereof pending proceedings herein. The defendant demurred to plaintiff's complaint, the demurrer was sustained, and judgment entered dismissing the action, from which judgment plaintiff appeals. The complaint is voluminous, but it is necessary to state in substance its material allegations, as the order of the court sustaining the demurrer is the principal error assigned.

It is alleged in the complaint that in December, 1917, the Utah National Underwriter's Corporation, hereinafter called said corporation, was engaged at Salt Lake City, Utah, and elsewhere in the state, through agents, in soliciting subscriptions to its capital stock, having its principal office and place of business in Salt Lake City; that in said month, at the request of said corporation through one of its agents, plaintiff subscribed for 250 shares of the preferred capital stock and a like amount of its common stock, agreeing to pay therefor the sum of $5,000; that he paid therefor the sum of $2,000 and executed two promissory notes for the remainder, one note in the sum of $500 and the other in the sum of $2,500, both of which notes are set out at length in the complaint, and show that the stock was deposited with said corporation as security for the payment of the notes, with power to sell the same at public or private sale in case the notes were not paid when due. Plaintiff alleges upon his information and belief that after maturity said notes were indorsed and delivered, together with the certificates of stock, to the defendant bank; that on January 17, 1919, the bank commenced an action upon said notes in the district court of Box Elder county, Utah, against the plaintiff herein and the said corporation, and that to the complaint in said action plaintiff herein, by his attorney, George Halverson, filed and served a general demurrer; that on the 10th day of March, 1919, said demurrer was overruled by the court in the absence of counsel for plaintiff herein, and plaintiff, as defendant in said cause, was granted 30 days' time in which to answer said complaint; that plaintiff herein is now informed and believes that no notice of the overruling of said demurrer, or of the

granting of said time and leave to answer to said complaint, was ever served on plaintiff herein or his counsel in said action; that on April 2, 1919, counsel for plaintiff in said action, defendant herein, filed therein what purports to be a notice of the decision of the court on said demurrer, annexed to which is an affidavit of service by mail, copy of which is annexed to the complaint herein. It is then alleged that thereafter, on May 13, 1919, plaintiff in said action, without notice to plaintiff herein or his counsel in said action, caused the clerk of said court to enter the default of this plaintiff as defendant in said cause for failure to answer plaintiff's complaint therein, and without notice to plaintiff herein or his counsel in said action; that on the 28th day of October, 1919, the plaintiff in said cause appeared in said cause by its counsel with witnesses, who were sworn therein, and thereupon the court orally directed that judgment be entered in favor of the plaintiff in said action against this plaintiff as defendant therein, and ordered findings and judgment to be prepared in accordance with said decision; that thereafter on the 15th day of December, 1920, findings of fact, conclusions of law, and judgment were prepared and presented to the court in said cause for signing and filing, and the same were signed and filed with the clerk of said court, and judgment entered in accordance therewith, but no notice thereof was ever served upon counsel for defendant in said action, plaintiff herein; that copies of the decision and judgment are annexed and made part of the complaint; that neither said decision nor judgment contained any direction for the sale of said collateral security or the application of the proceeds of such sale to the payment of the indebtedness on said notes before entering personal judgment against the defendant therein for any deficiency that might exist, and plaintiff alleges upon his information and belief that the court in said cause failed to observe such omission in said judgment and by inadvertence signed and filed the decision and judgment aforesaid; that plaintiff herein was not informed and did not know of the entry of said judgment, but believed that said action was still pending, until about May 19, 1924, when execution was for the first time issued upon said judgment, directed

to the sheriff of Weber county, in which county plaintiff herein resides, and levied upon certain real property belonging to plaintiff in this action; that, notwithstanding the facts above stated, the plaintiff in said action still held in its possession the collateral security aforesaid.

It is then alleged in plaintiff's complaint that the said corporation was and is a corporation organized under the laws of Arizona, with its principal place of business in Salt Lake City, Utah, and at the time of the purchase of said stock by plaintiff said corporation, although doing business in its corporate capacity in the state of Utah, had not complied, and never did comply, with the law relating to foreign corporations doing business within this state by filing with the secretary of state and the clerk of Salt Lake county a copy of its articles of incorporation and a copy of its by-laws, etc., as provided by law, all of which it is alleged in the complaint was unknown to plaintiff or his counsel in said cause until after the entry of said judgment; that said facts were unknown to him until July, 1924; that by reason of the name of said corporation and the fact, which plaintiff alleges to be the fact, that said corporation was organized and incorporated by prominent citizens of the state of Utah, who had been publicly advertised as having subscribed for its capital stock, plaintiff at the time of his subscription for said stock believed and until July, 1924, continued to believe, that said corporation was authorized to do business within the state of Utah, otherwise he would not have purchased said stock; that, by reason of plaintiff's ignorance as to the legal capacity of said corporation to transact business in Utah, plaintiff did not inform his counsel in said cause of said facts, which, as plaintiff is now advised and believes, constituted a good defense to said action. Plaintiff further alleges upon his information and belief that, at the time of the indorsement and delivery of said notes and collateral security to the plaintiff in said action, it had knowledge of the fact that said notes were absolutely void, and, in order to obtain an unfair advantage, it suppressed said fact and permitted said judgment to lie dormant until long after the right of appeal therefrom, or to move to set aside said default, had expired; that plain-

tiff in said cause, defendant herein, is now attempting to enforce by execution the collection of said judgment, and the real property of this plaintiff will be sold to satisfy said judgment, unless sale thereof is enjoined by the court in this action.

Plaintiff then alleges that at the time of the entry of said judgment and issuance of execution thereon, he was absent from the state of Utah and temporarily residing in California, and that he did not know of the entry of said judgment or that he had a defense thereto until he was informed by an attorney, other than his counsel in said action, that in a certain case on appeal to the Utah Supreme Court, to wit, First National Bank of Price v. Parker, 194 P. 661, 57 Utah, 290, decided December 20, 1920, the court had adjudged and determined that the said corporation was not authorized to do business in the state of Utah because of its noncompliance with the laws of the state; that plaintiff was thereby informed that his contract with said corporation and the aforesaid promissory notes were void. By a subsequent amendment to the complaint the plaintiff alleges that the complaint upon which said judgment was entered did not state facts sufficient to constitute a cause of action; that plaintiff demurred to said complaint on that ground, but his demurrer was improperly overruled; that said complaint failed to allege that the corporation had complied with the laws of the state relating to foreign corporations; that the court had no jurisdiction to render a valid judgment in said cause, for all of which reasons said judgment has at all times been wholly void and of no effect. Plaintiff prays that the said judgment be vacated and held for naught, and for other equitable relief.

There is annexed to the complaint as a part thereof the following exhibits, consisting of files of the court in the case in which the judgment was obtained: (a) The complaint; (b) the notice of overruling defendant's demurrer, together with the affidavit of service; (c) findings of fact and conclusions of law; (d) the judgment. These exhibits will be referred to more specifically if it becomes necessary in the course of the opinion.

Appellant's first point against the judgment is that the

complaint upon which the judgment was founded did not
state facts sufficient to constitute a cause of action. Under
this head it is contended that, while the complaint alleged
that the Utah National Underwriter's Corporation was a cor-
poration organized under the laws of Arizona, it failed to
allege that said corporation had complied with the laws of
Utah authorizing it to do business within this state. In this
connection appellant refers to First National Bank of Price
v. Parker, 194 P. 661, 57 Utah, 290, 12 A. L. R. 1373, in
which it was held that promissory notes indorsed and trans-
ferred to the bank by the corporation were void even in the
hands of a holder in due course. The sole reason for such
holding was the fact that the corporation had not complied
with the Utah laws authorizing it to do business within the
state.

Appellant contends that, where it is alleged that a corpora-
tion through which a plaintiff claims title is a foreign cor-
poration, it is a fatal defect if the complaint fails to allege
that the corporation has complied with the laws of the state
in the respects above mentioned. Many authorities are cited
from Alabama, Texas, and New York sustaining this view.
*Sullivan* v. *Vernon*, 25 So. 600, 121 Ala. 393; *Turner* v.
*National Oil Company*, 109 S. W. 1112, 50 Tex. Civ. App.
468; *American Can Co.* v. *Grassi Contracting Co.*, 168 N. Y.
S. 689, 102 Misc. Rep. 230; *Chapman* v. *Hallwood Cash Reg-
ister Co.*, 73 S. W. 969, 32 Tex. Civ. App. 76; *Cumberland
Land Co.* v. *Canter Lbr. Co.* (Tenn. Ch. App.) 35 S. W. 886;
*Lycoming Fire Ins. Co.* v. *Wright*, 55 Vt. 526; *Cary-Lombard
Lbr. Co.* v. *Thomas*, 22 S. W. 743, 92 Tenn. 587; *Huffman*
v. *Western Mortgage Co.*, 36 S. W. 306, 13 Tex. Civ. App.
169; *Christian* v. *American Freehold Land Co.*, 7 So. 427, 89
Ala. 198; *Mullens* v. *American Freehold Land Co.*, 7 So.
201, 88 Ala. 280; *Farrior* v. *New England Mortgage Security
Co.*, 7 So. 200, 88 Ala. 275; *Taber* v. *Interstate Build. Co.*, 40
S. W. 954, 91 Tex. 92; *St. Louis Fire-Proofing Co.* v. *Beil-
harz* (Tex. Civ. App.) 88 S. W. 512; *Peters* v. *Anheuser-
Busch Brewing Co.* (Tex. Civ. App.) 55 S. W. 516; *Southern
Build. Ass'n* v. *Skinner* (Tex. Civ. App.) 42 S. W. 320;
*Wilson & Co.* v. *Bazaar* (Sup.) 168 N. Y. S. 188; *Rexall Drug*

*Co.* v. *Butler Bros. Co.* (Tex. Civ. App.) 185 S. W. 989; *Wood* v. *Ball,* 100 N. Y. S. 119, 114 App. Div. 743; *Harris Automatic Press Co.* v. *Demarest Pattern Co.,* 94 N. Y. S. 462, 47 Misc. Rep. 624; *Welsbach Co.* v. *Norwich Gas & Elec. Co.,* 89 N. Y. S. 284, 96 App. Div. 52.

The court is of opinion, however, that the cases cited by appellant are contrary to the overwhelming weight of authority. In 14a C. J. page 1358, the author says:

"In most jurisdictions it is held that it is not necessary for a foreign corporation, in order to maintain an action, to allege compliance with the statutory requirements imposed upon foreign corporations as a condition or limitation on the right to do business or to sue in the state, but that noncompliance therewith is a matter of defense to be pleaded in bar or in abatement, according to the construction placed upon the statute in the particular jurisdiction."

The courts of 29 states of the Union, as well as of Porto Rico, the Philippines, and Canada, are cited in the note in support of the text, and the reasons for the rule are stated at length in the note on page 1359. See, also, 9 Fletcher Cyc. Corp. §§ 5997 and 5998, where the same rule is announced and cases cited.

Assuming, however, that defendant's general demurrer raised the question in the trial court, it is by no means conclusive that the demurrer should have been sustained. The complaint on which the judgment was rendered nowhere alleged that the corporation was doing business in Utah. The nearest approach to such an allegation is:

"That on the 21st day of December, 1917, at Salt Lake City, Utah, Fred W. Redfield, by his promissory note, a copy of which is filed herewith and made part of this complaint, promised to pay to the defendant, Utah National Underwriter's Corporation, or order, $500."

The note is set out at length, and the further allegation is made that before maturity, for a valuable consideration, the corporation indorsed it to the bank (plaintiff therein). For aught that apepars in all of the transactions alleged in the complaint, the notes may have been executed by Redfield and forwarded to the corporation in Arizona, the state where it resided. Independent of the question as to whether such busi-

ness would be purely interstate, does the complaint on its face disclose a fatal defect? Did the single act of Redfield executing two promissory notes to the corporation which indorsed them to the bank constitute doing business in the state, and therefore prohibited within the meaning of the Utah statute?

Counsel for respondent calls our attention to 3 Cook on Corporations (8th Ed.) § 696, p. 2818, where the authorities are copiously referred to in the note. From these it would appear that a great majority of the cases referred to hold, in effect, that a single transaction like the one in the instant case does not constitute "doing business" within the meaning of the law.

It is true the plaintiff, Redfield, in his complaint in this action, alleges that the corporation was doing business in this state, but we are now considering the question whether the complaint upon which the judgment was founded disclosed the fact that in contemplation of law the corporation was doing business within the state. If it does not, then it certainly was not necessary to allege a noncompliance with the statute. 9 Fletcher on Corporations, 10172. Not only this: The transaction described in the complaint may have been merely interstate business. Unless it clearly appeared that the transaction was intrastate business, as distinguished from interstate, then in no event was it necessary to allege that the corporation had complied with the laws of the     1, 2 state. This proposition finds support in the following authorities: 14a C. J. 1253; *Barcus* v. *J. I. Case Threshing Mach. Co.* (Tex. Civ. App.) 197 S. W. 478; *York Mfg. Co.* v. *Colley*, 38 S. Ct. 430, 247 U. S. 21, 62 L. Ed. 963, 11 A. L. R. 611; *Sioux Remedy Co.* v. *Cope*, 35 S. Ct. 57, 235 U. S. 197, 59 L .Ed. 193.

But, even if a complaint upon which a judgment is founded failed to state facts sufficient to constitute a cause of action, it does not follow that upon that ground alone equity will afford relief against its enforcement. In Freeman on Judgments (4th Ed.) § 487, the author discusses this question at considerable length, from which it is clearly deducible that if the court has jurisdiction of the subject-matter, and of the

person, equity will not restrain the enforcement of a judgment merely because the complaint in the action was fatally defective. The author cites one case which indicates the length to which the courts have gone in this regard.    **3** In *Cassel* v. *Scott*, 17 Ind. 514, the syllabus fairly reflects the nature of the case and the holding of the court:

"Suit to restrain the collection of a judgment rendered upon certain bonds filed with the county auditor, under the provisions of the act of March 4, 1853, to regulate the sale of spirituous liquors, etc. Acts 1853, p. 87. The complaint alleged that the act under which the bonds were filed was unconstitutional and void, and that the judgment, for that reason, was a nullity. *Held*, that the act being unconstitutional and void, the bonds were not supported by a legal consideration; but the judgment rendered, thereon, though erroneous, was not void, but must be regarded as operative until reversed by a court of error."

While it is true that an action of this kind is a direct attack upon the judgment, yet the rules and limitations established and recognized by courts of equity, except in cases of palpable fraud, render the attack almost as difficult of accomplishment as would be a collateral attack. The case last cited is an example. There is no doubt that in that case, if the unconstitutionality of the statute had been raised by demurrer or otherwise in the original case, the defendant would have been discharged from the obligation upon which the action was founded. But, as we have seen, when the question was raised for the first time in an inde-    **4** pendent action, the court held that, while the judgment "may be deemed erroneous," it "is not void, and must be held operative until, in accordance with the ordinary rules of procedure, it is reversed by a court of error." So it appears to the court that plaintiff in this action is not entitled to have the judgment in question vacated and annulled, even if it be conceded that the complaint in that action did not state facts sufficient to constitute a cause of action.

The next question is, Are there any other reasons alleged in plaintiff's complaint in the instant case why the judgment should be annulled? In this connection a brief history of the case in which the judgment was rendered, as we find it in plaintiff's complaint herein, may be enlightening. The

promissory notes upon which that action was brought were executed December 2, 1917, payable in six months and one year respectively. They were indorsed and transferred to the bank, as alleged in the complaint, before maturity for a valuable consideration. Action was commenced thereon January 17, 1919, more than one year after the last one became due. On February 13, 1919, defendant therein filed a general demurrer to the complaint. On March 10th of the same year the court, in the absence of counsel for defendant therein, overruled the demurrer and granted defendant 30 days' time in which to answer the complaint. And while plaintiff alleges affirmatively, on his information and belief, that no notice of the overruling of the demurrer and the granting of time to answer was ever served upon him or his counsel, he nevertheless attaches to his complaint, as a part thereof an exhibit which purports to be a written notice of said orders supported by an affidavit of service thereof on March 29, 1919. The next step in the proceedings was on May 13, 1919, when default was entered against defendant for not answering the complaint which plaintiff herein alleges was done without notice to him or his counsel. Thereafter, on October 28, 1919, without notice to defendant therein, or his counsel, plaintiff in said cause produced witnesses who were sworn and examined, and thereupon the court, orally, directed that judgment be entered in favor of the plaintiff therein, and ordered findings and judgment to be prepared accordingly. Thereafter, on December 15, 1920, findings of fact, conclusions of law, and judgment were signed by the judge and filed with the clerk, but it is alleged that the same was without notice to defendant therein, or his counsel, and that the judgment failed to direct that the collateral be first sold and the proceeds applied to the payment of the notes. Finally, it is alleged that plaintiff herein was not informed and did not know of the entry of said judgment until May, 1924, when execution for the first time was issued upon the judgment and levy made upon his real estate in Weber county.

The foregoing summary of the proceedings in the former case, together with the fact that the plaintiff temporarily

resided in California and did not know that he had a defense to the said action until some lawyer other than his own counsel, in July 1924, informed him of the decision of this court in the Price Bank Case, constitute the further grounds upon which plaintiff seeks to have the judgment annulled.

The question now is, What equitable grounds are made to appear in plaintiff's complaint to vacate and set aside the judgment?

Assuming that the plaintiff herein, as defendant in the former case, did not receive notice of the overruling of his demurrer, nor of the entry of his default, nor of the findings and judgment in the case, can plaintiff, years afterwards, avail himself of such omissions as an excuse for annulling the judgment unless he can show that plaintiff in that case did or said something by which he was misled and lulled into a sense of security? As far as concerns the notice of the overruling of the demurrer and granting time to answer, plaintiff himself, in his complaint herein, has shown that written notice was mailed to his counsel, and if for any reason said service was insufficient it was incumbent on plaintiff to show the defect.

In view of the record, a summary of which we have above set forth, plaintiff certainly cannot complain that snap judgment was taken against him in the original case. He was given 30 days to answer the complaint, and more than 60 days elapsed before default was entered. Thereafter more than 5 months elapsed before evidence was taken and judgment ordered, and more than a year and 7 months before findings and judgment were finally entered and filed. Lastly, more than 4 years elapsed after filing the judgment before an attempt was made to enforce it by execution.

We have yet to be informed of any case in which a court of equity has set aside a judgment on grounds as insufficient as those appearing in the case at bar. The Utah cases cited by appellant lend no support to his contention. They speak for themselves. It is not necessary to do more than call them to the attention of the reader. *Higgs* v. *Burton*, 197 P. 728, 58 Utah, 103, 104; *Riddle* v. *Quinn*, 90

P. 893, 32 Utah, 341; *Benson* v. *Anderson,* 47 P. 142, 14 Utah, 334; *Leibhart* v. *Lawrence,* 120 P. 215, 40 Utah, 243; *Taylor* v. *Guaranty Mortgage Co.,* 220 P. 1067, 62 Utah, 520; *McMillan* v. *Forsythe,* 154 P. 959, 47 Utah, 571.

Plaintiff's alleged ignorance of the various steps taken and orders made against him in the proceeding of which he complains is so palpably inexcusable as to merit little or no comment in addition to what has been said. One fact stands out prominently in the case: He did have notice that he had a case pending in court in which he was sued for a substantial sum of money. He thought he had no defense against it, left the state, took up his residence in California, and paid no further attention to his case until more than 5 years afterwards when somebody informed him he had a defense to the action—a defense which might have been discovered in the exercise of reasonable diligence in time to make it available in the action; in other words, it was manifestly his own fault, or that of his counsel, that the defense was not discovered in time. In such case this court has recently held that a court of equity will not grant relief. *Anderson* v. *State* (Utah) 238 P. 557, and cases cited; 34 C. J. p. 450 et seq.

The fact that a party has suffered some injustice and that the judgment may be wrong in law is not alone sufficient. As said in 2 Freeman on Judgments (4th Ed.) p. 854:   **7**

"A court of equity does not interfere on the ground that injustice has been done, or that a judgment is wrong in law or in fact, or that its enforcement will work a great hardship, unless the party complaining was, without his fault, deprived of his opportunity to present his defense in the original action on the merits."

The objection is also made that the judgment did not direct that the collateral be sold and the proceeds applied to the payment of the notes before entering a personal judgment. If the collateral had any value whatever and would have brought anything of value in the market or at private sale, it was undoubtedly prejudicial error not to direct such sale to be made, and in such case the error might have been corrected on appeal. *National Bank* v. *Pingree,* 218 P. 552,

62 Utah 259.  It could also have been corrected by proper proceedings in the court below.  But plaintiff in this case has failed to show that the collateral had any value or that he was in any manner prejudiced by the          **8** judgment omitting to direct a sale.  In such case the error would not even be available on appeal, much less in the present proceeding.

We have studiously endeavored to review every point relied on by appellant that in our opinion had any merit. The principal point relied on and which we have reviewed at greatest length is the fact that appellant was ignorant of the law and fact which rendered void the contracts of the corporation.  Even if such ignorance may be accepted as an excuse in some particular case, it should not be accepted in a proceeding of this kind where more than 4 years have elapsed after the law and the fact were publicly announced by the tribunal of last resort in the jurisdiction where plaintiff's action was pending.  This, it seems to us, is an example of the most inexcusable negligence and lack of diligence on the part of plaintiff herein.  Nor can it be successfully contended that such ignorance and negligence on the part of plaintiff is in any manner attributable to the bank in whose favor the judgment in question was rendered.

We find no error in the record.

The judgment is therefore affirmed at appellant's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.

## On Application for Rehearing.

PER CURIAM.

Appellant applies for a rehearing and assails the opinion on several grounds.

It is contended that the judgment obtained by the bank against appellant and which appellant on this appeal seeks to have vacated and set aside was void because it did not direct a sale of the stock and application of the proceeds before entering a personal judgment.

Appellant appears to ignore the fact that this is a pro-

ceeding in equity to vacate a judgment, and that it is incumbent upon him to bring his case within the rules required in such proceedings (*Anderson* v. *State of Utah*, 238 P. 557, and cases cited), and must also show that he was prejudiced by the proceeding complained of. On this particular point the burden was upon the appellant to both plead and prove that the stock held as collateral for the payment of the notes had some value and that the proceeds of a sale thereof would have at least partially satisfied the judgment. If the stock was valueless, why incur the expense of attempting to sell it? Of course, it would have been a more orderly proceeding on the part of the trial court if it had made a finding that the stock was valueless before entering a personal judgment. It cannot be successfully contended that the irregularity referred to renders the judgment void.

It is also contended that the opinion is erroneous in holding that there is no law requiring notice of the overruling of the demurrer, entry of default, or the findings and judgment in a case.

Appellant calls our attention to statutes which justify his contention in that regard and the opinion will be modified in that particular. However, the law requiring notice to be given in such cases is clearly not jurisdictional. Such errors, if prejudicial, may be corrected on appeal, but do not render a judgment void and subject to collateral attack.

Appellant cites for the first time certain decisions of this court which he says we ignored in the opinion, to wit: *Stockyards National Bank of South Omaha* v. *Bragg et al.* (Utah), 245 P. 966; *Thero* v. *Franklin*, 160 P. 1188, 48 Utah, 587; *Franklin* v. *Thatcher*, 178 P. 922, 53 Utah, 397. The first case cited is pending in this court on application for rehearing. None of the cases cited, as will appear upon an examination, is applicable to the question under review. See, also, the following cases cited by appellant: 15 R. C. L. 605; *Russell* v. *Shurtleff*, 65 P. 27, 28 Colo. 414, 89 Am. St. Rep. 216; *Larson* v. *Williams*, 63 N. W. 464, 69 N. W. 441, 100 Iowa, 110, 62 Am. St. Rep. 544. The same may be said

of these cases as was said of the Utah cases referred to, they are not applicable to the point in question.

As before stated, it was incumbent upon appellant in a proceeding of this nature to show prejudice as well as error, which he could easily have done, if the stock referred to had any value. Had he alleged such fact in his complaint in this case, if it were a fact, under his prayer for general relief, this court might have been warranted in directing the trial court to modify the judgment by ordering the stock to be first sold and the proceeds applied to a payment of the judgment.

The application for a rehearing is denied.